IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEROALD HOPKINS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:21-CV-334-RP |
| WAYSIDE SCHOOLS, | § § | |
| Defendant. | § § | |

**ORDER**

Before the Court are Defendant Wayside Schools' Motion to Dismiss, (Dkt. 6), Opposed Motion for Protective Order, (Dkt. 15), Motion to Expedite, (Dkt. 23), and the parties' related responses and replies. Having considered the parties' briefs, the evidence, and the relevant law, the Court enters the following order.

**I. BACKGROUND**

Plaintiff Deroald Hopkins ("Hopkins") brings the instant suit against his former employer, Defendant Wayside Schools ("Wayside"), alleging violations of 41 U.S.C. § 4712(c)(2) and 42 U.S.C. § 1981. Wayside is a Texas non-profit corporation that has a contract with the State of Texas to run open-enrollment charter schools. Hopkins was employed by Wayside as its COO/CFO from November 2017 until he was terminated on January 7, 2020. (Dkt. 1, at 5). Hopkins' Complaint alleges that Wayside terminated his employment in retaliation for reporting alleged mishandling and misappropriation of state and federal funding. *Id.* at 5–7. Hopkins, an African American man, also alleges that Wayside's decision to terminate him was based on his race. *Id.* at 7–8. The Complaint notes that Hopkins was "the first and only African American on the Executive Committee for the duration of [Hopkins'] employment." (*Id.* at 7) and alleges that "the most telling fact that shows race

1

played a role is that only Mr. Hopkins, the black employee, was fired for reporting the financial mismanagement of state and federal funds." *Id.* at 8.

Hopkins was terminated in January of 2020. According to his Complaint, on May 13, 2020, Hopkins submitted a whistleblower report to the Office of Inspector General ("OIG") for the Department of Education alleging that he was terminated by Wayside in violation of Section 4712. *Id.* The OIG dismissed Hopkins' complaint without investigation on June 20, 2020. *Id.*

Hopkins filed the instant suit on April 15, 2021. Dkt. 1. His Complaint brings two causes of action against Wayside: (1) retaliation for his "whistleblower efforts," in violation of 41 U.S.C. § 4712; and (2) race discrimination in violation of Section 1981. *Id.* at 8–9. With respect to Hopkins' race discrimination claim, the Complaint alternatively asserts that, "[t]o the extent sovereign immunity exits, this cause of action is being brought though 42 U.S.C. § 1983." *Id.* at 9.

Wayside's motion to dismiss urges the Court to dismiss Hopkins' suit in its entirety. Dkt. 6. Wayside asserts that Hopkins' Section 4712 and Section 1981 claims must be dismissed pursuant to Rule 12(b)(1) because they are barred by Wayside's Eleventh Amendment immunity, invoking a sovereign immunity defense. *Id.* at 9–23. Wayside also moves to dismiss Hopkins' alternatively pled Section 1983 discrimination claim for failure to state a claim under Rule 12(b)(6). *Id.* at 17–20. In response, Hopkins disputes Wayside's assertion of immunity, and maintains that he has adequately pled his race discrimination claim. Dkt. 9. In the alternative, Hopkins' response requests the Court grant leave to amend to plead additional facts supporting his claims. *Id.* at 26. The Court considers Wayside's challenge to jurisdiction under Rule 12(b)(1) before turning to its arguments regarding the sufficiency of Hopkins' pleadings.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A lack of subject-matter jurisdiction is asserted through a Rule 12(b)(1) motion to dismiss. Fed. R. Civ. P. 12(b)(1). If a court determines at any time that it lacks subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Lack of subject matter jurisdiction may be found in any one of three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.*

### B. Rule 12(b)(6)

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. Rule 12(b)(1) Motion

As stated above, Wayside first moves to dismiss Hopkins' Section 4712 and Section 1981 claims for lack of jurisdiction under Rule 12(b)(1), arguing that it qualifies for sovereign immunity as an arm of the State of Texas. Facing that motion, Hopkins bears the burden of demonstrating the court's jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). The Court can rely on the pleadings, undisputed facts, and its own resolution of disputed facts. *Meliezer v. Resol. Tr. Co.*, 952 F.2d 879, 881 (5th Cir. 1992).

The Supreme Court has held that the Constitution's structure confirms a background principle of state sovereign immunity from unconsented-to suits in federal court, even outside of Eleventh Amendment immunity. *See Alden v. Maine*, 527 U.S. 706, 712–13 (1999) (clarifying that states' sovereign immunity "neither derives from, nor is limited by, the terms of the Eleventh Amendment"). A state's sovereign immunity in federal court extends to any entity that qualifies as

an alter ego or arm of the state. *Vogt v. Bd. of Comm'rs*, 294 F.3d 684, 688–89 (5th Cir. 2002). The Fifth Circuit has explained that whether an entity qualifies turns on a consideration of: (1) whether state statutes and case law characterize the entity as an arm of the state; (2) the entity's source of funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *See Clark v. Tarrant Cty. Tex.*, 798 F.2d 736, 744–45 (5th Cir. 1986). No combination of factors is necessary to demonstrate sovereign immunity as an arm of the state, however the Circuit Court has held that the source of an entity's funding is the most important consideration. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002) (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999)). That factor's importance reflects sovereign immunity's purpose of protecting state funds. *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147-48 (5th Cir. 1991).

If Wayside is an arm of the State of Texas, the law is clear that sovereign immunity bars Hopkins' claims. Neither Wayside nor Texas has consented to suit under these circumstances; a state's consent to suit in its own courts is not consent to suit in federal courts. *See, e.g., Hernandez v. Tex. Dep't of Hum. Servs.*, 91 F. App'x 934, 935 (5th Cir. 2004) (per curiam) ("Texas' waiver of sovereign immunity [for TCHRA claims] in its own courts, however, is not a waiver of its Eleventh Amendment immunity in federal courts."). Congress has not abrogated Texas's sovereign immunity regarding any of the claims presented here. *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) (holding that the self-care provision of the FMLA does not abrogate sovereign immunity); *Perez*, 307 F.3d at 326 ("Congress did not abrogate the states' sovereign immunity in enacting Title I of the ADA."). The Court therefore turns to the six-factor *Clark* test.

5

1. State-law characterization

The first *Clark* factor concerns whether state law views an entity as an arm of the state. *Clark*, 798 F.2d at 744 (citations omitted). This consideration favors immunity.

Under Texas law, open-enrollment charter schools are "part of the public school system of this state" and are designated as "governmental unit[s]" entitled to the same immunity from suit in matters related to school operation as are school districts. Tex. Educ. Code Ann. §§ 12.105, 12.1056(a), (b). State case law confirms that charter schools are "an integral part of Texas's public-education system[.]" *Tex. Educ. Agency v. Acad. of Careers and Techs., Inc.*, 499 S.W.3d 130, 135 (Tex. App. 2016). Unlike independent school districts that tax and receive local tax revenues, open-enrollment charter schools are wholly funded by the State, receiving no local tax revenue. *See* Tex. Educ. Code Ann. § 12.102(4) (denying charter schools the power to levy taxes).

The Texas Supreme Court has thus concluded that "open-enrollment charter schools act as an arm of the State government" and are entitled to immunity in state courts. *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 529-30 (Tex. 2020). The Texas Supreme Court recently emphasized that open-enrollment charter schools "are accountable to State government through oversight of their charters and through the receipt of substantial public funding." *Id.* at 529. It further reasoned that the schools were entitled to immunity because "[d]iverting charter school funds to defend lawsuits and pay judgments affects the State's provision of public education and reallocates taxpayer dollars from the legislature's designated purpose." *Id.* at 530. Accordingly, the first *Clark* factor favors Wayside for purposes of immunity.

2. Source of funding

The *Clark* factor regarding state funding considers "both the state's liability for a judgment rendered against [an entity] and the state's liability for general debts and obligations." *Perez*, 307 F.3d

at 328. In considering this second factor, courts also examine whether any state funding is earmarked for a particular purpose. *Id.*

An open-enrollment charter school receives state funds under Texas Education Code § 12.106, and those state public funds may be used only for public-school purposes as authorized under Texas Education Code § 12.107. Pursuant to those provisions, Wayside received 89% of its funding from the State in the most recent fiscal year, a fact that Hopkins does not dispute. (*See* Dkt. 6-1).

The funding analysis here resembles that in *Perez*. There, the Fifth Circuit held that education service centers were arms of the State of Texas. 307 F.3d at 329. The centers, like Wayside here, received most of their funding from the State. *Id.* The Fifth Circuit emphasized: "unlike local school districts, the [c]enters do not possess any tax levying or bonding authority that could be used to raise funds." *Id.* Although Texas law did not indemnify the centers, their funding dependence on the State meant that "a judgment rendered against the [c]enters would be paid in large portion by the [S]tate." *Id.* The same reasoning justifies deeming open-enrollment charter schools as financially dependent on the State, as the Texas Supreme Court has concluded in the context of sovereign immunity in state court. *El Paso Educ.*, 602 S.W.3d at 530 (concluding that "[d]iverting charter school funds to defend lawsuits and pay judgments affects the State's provision of public education and reallocates taxpayer dollars from the legislature's designated purpose") (citing *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 124 (Tex. 2015)).

The second *Clark* factor, like the first, favors deeming Wayside an arm of the State of Texas for purposes of immunity from suit. And because the source of funding is the most important factor, *Perez*, 307 F.3d at 327, Wayside has a powerful argument for immunity. *See id.* ("No one [*Clark*] factor is dispositive, though we have deemed the source of an entity's funding a particularly

7

important factor because a principal goal of the Eleventh Amendment is to protect state treasuries.").

### 3. Local autonomy

The third factor focuses on whether Wayside exercises local autonomy or whether it is primarily controlled by the State of Texas. Open-enrollment charter schools like Wayside, are subject to state requirements to report misconduct and to the state education commissioner's authority to inspect records to ensure compliance with those reporting requirements. Tex. Educ. Code Ann. § 21.006. The commissioner can also revoke Wayside's charter for any of several reasons, including financial mismanagement. *Id.* § 12.1162(a)(1)–(3). As Texas courts have noted, the State has "unfettered discretion" over a charter school. *Tex. Educ. Agency v. Am. YouthWorks, Inc.*, 496 S.W.3d 244, 261–62 (Tex. App. 2016), *aff'd sub nom., Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018); *see also El Paso Educ.*, 602 S.W.3d at 529 (noting that open-enrollment charter schools "must adhere to state law and the Commissioner's regulations governing public schools or risk revocation of its charter"). Although open-enrollment charter schools undeniably possess some autonomy over discretionary functions, they are also subject to substantial state supervision. The third *Clark* factor is either neutral or tilts in Wayside's favor.

### 4. Local versus statewide focus

The fourth factor concerns whether Wayside focuses primarily on local or statewide issues. *See Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 347 (5th Cir. 1998) (focusing on "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants"). Wayside and similarly situated institutions are accountable to the State and not to local officials. *See Perez*, 307 F.3d at 330 (focusing on service centers' accountability to Texas officials). Here, Wayside's individual schools operate to serve local communities. (*See* Dkt. 6-2). Accordingly, this factor cuts against immunity.

5.  Authority to sue and be sued

The Texas Education Code grants school districts the right to sue and be sued, Tex. Educ. Code Ann. § 11.151(a), but it does not mention open-enrollment charter schools. In nearly identical circumstances (*see Perez*, 307 F.3d at 331), the Fifth Circuit held that the *Clark* factor assessing authority to sue and be sued "slightly favors immunity." *Id*. Here, facing very similar circumstances, Hopkins has provided no valid reason to reach a different conclusion in his case.

6.  Property ownership and use

The final factor—whether Wayside can hold and use property—favors immunity. Under Texas law, all property purchased with funds received by a charter holder (1) "is considered to be public property for all purposes under state law," (2) "is property of [Texas] held in trust by the charter holder," and (3) "may be used only for a purpose for which a school district may use school district property." Tex. Educ. Code Ann. § 12.128(a)(1)–(3). Although the Texas Education Code was amended to explain that a charter holder "holds title to any property . . . and may exercise complete control over the property," *id*. § 12.128(b-1), that language fleshes out the scope of the trust over property used by the charter schools as opposed to vesting unrestricted private rights in the property. *See Honors Acad., Inc.*, 555 S.W.3d at 63 (finding that the Texas Legislature "has [not] . . . created vested private-property rights in the creation of the charter school system"). The final *Clark* factor is thus either neutral or favors immunity.

In sum, the governing *Clark* factors indicate that Wayside is an arm of the state for purposes of sovereign immunity from an unconsented-to suit. Accordingly, Wayside is entitled to dismissal of Hopkins' Section 4712 and Section 1981 claims, without prejudice. *See Sullivan*, 986 F.3d at 595; *see also Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

### B. Rule 12(b)(6) Motion

Hopkins' Complaint asserts his race discrimination claim against Wayside under Section 1981, but also states that "[t]o the extent sovereign immunity exists, this cause of action is being brought through 42 U.S.C. § 1983." (Dkt. 1 at 9). Wayside moves to dismiss Hopkins' alternatively pled Section 1983 cause of action arguing that Hopkins has not pled sufficient facts to support the claim. (Dkt. 6 at 24).

In order to assert a claim under 42 U.S.C. § 1983 against Wayside, Hopkins must allege that the unconstitutional acts he complains of were committed by Wayside itself rather than by its employees or agents. *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 694 (1978). A governmental entity such as Wayside cannot be held liable for violations under a theory of respondeat superior or vicarious liability. *Id.* Under Texas law, public school boards make policy and superintendents administer. *Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007). Here, Hopkins alleges he was terminated by the Superintendent of Wayside and a chairman of Wayside's board. (Dkt. 1 at 6). However, Hopkins has not pled sufficient facts to establish that the board took formal action against him, or discriminatory action, pursuant to some policy or custom. Thus Hopkins has not stated a plausible claim under 42 U.S.C. § 1983. Wayside's Rule 12(b)(6) motion is granted as to Hopkins' alternatively pled Section 1983 discrimination claim.

### C. Leave to Amend

In Hopkins' response to Wayside's motion for dismissal, Hopkins asks alternatively for leave to amend his complaint. (Dkt. 9 at 23). Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). It is within the district court's discretion whether justice dictates leave should be granted or denied. *See Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992). When a complaint fails to state a claim, a court should generally give the plaintiff an opportunity to amend under Rule

10

15(a) before dismissing the action with prejudice. "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991)). The Court cannot state that amendment would be futile if Hopkins can plead, in good faith, a specific factual basis for his Section 1983 discrimination claim, as discussed above. Accordingly the Court grants Hopkins' request for leave to amend his Complaint with the required specificity to support his claim.

### D. Other Motions

Lastly, Wayside has also filed a Motion for Protective Order, (Dkt. 15), and Motion to Expedite, (Dkt. 23). Both are related to the Court's consideration of Wayside's Motion to Dismiss. In light of the instant order, Wayside's Motion for Protective Order, (Dkt. 15), and Motion to Expedite, (Dkt. 23), are dismissed as moot.

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant Wayside Schools' Motion to Dismiss (Dkt. 6) is **GRANTED**. Should Plaintiff wish to amend his Complaint, he shall file the amended Complaint **on or before April 15, 2022.**

Defendants' Motion for Protective Order (Dkt. 15) and Motion to Expedite (Dkt. 23) are dismissed as **MOOT**.

**SIGNED** on March 23, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE