IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEROALD HOPKINS, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:21-CV-0334-RP |
| WAYSIDE SCHOOLS, | § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Defendant Wayside Schools' ("Wayside") Amended Motion to Dismiss for Failure to State a Claim and Motion to Strike, (Dkt. 41). Also before the Court is Plaintiff Deroald Hopkins's ("Hopkins") Motion for Reconsideration of Defendant's Motion to Dismiss Regarding Eleventh Amendment Immunity. (Dkt. 46). Having considered the motion and the responsive filings, the Court finds that the motion should be denied.

### I. BACKGROUND

Wayside is an open-enrollment charter school. (Am. Compl., Dkt. 40, at 2). Hopkins, an African-American person, alleges that Wayside unlawfully terminated him as retaliation for certain whistleblowing efforts, and on account of his race. (*Id.* at 7–9).

Hopkins alleges the following: Wayside terminated Hopkins's employment on January 7, 2020. (*Id.* at 6). At the time of his termination, Hopkins served as Wayside's COO/CFO and was part of Wayside's executive committee (*Id.* at 5). According to Hopkins, prior to his termination, he was the only African American person on the Executive Committee and in management, and he had been commended for his work. (*Id.* at 7, 8, 9)

Hopkins alleges that he uncovered discrepancies in Wayside's financial reporting and tried to report the issues to the Matthew Abbot, Wayside's Superintendent (the "Superintendent"), and to

1

other individuals, including Wayside's finance committee, some auditors, and an external finance team. (*Id.* at 4–5). Hopkins further alleges that he was fired by the Superintendent and John Troy, Chairman of Wayside's School Board (the "Chairman"), in response to his whistleblowing, and that prior to his whistleblowing, he had been commended for his performance. (*Id.* at 6–7, 9). Finally, Hopkins alleges that he was the only African American member of Hopkins's Executive Committee, that he was treated differently than non-Black executive committee members, and that he was also fired on account of his race. (*Id.* at 8–9). According to Wayside, Hopkins was fired for "lack of clear communication and reliable board reporting" and for "submitting an incorrect budget amendment." (*Id.* at 7–8).

Hopkins filed the instant suit on April 15, 2021. (Dkt. 1). His Complaint alleged retaliation for his "whistleblower efforts in violation of 41 U.S.C. § 4712(c)(2), and race discrimination in violation of 42 U.S.C. § 1981. (*Id.* at 8–9). With respect to Hopkins' race discrimination claim, the Complaint alternatively asserted claims under 42 U.S.C. § 1983. (*Id.* at 9). On March 23, 2022, the Court entered an order granting Wayside's motion to dismiss. (Dkt. 33). In its order, the Court found that Wayside is an arm of the state for purposes of sovereign immunity based on an analysis of the *Clark* factors. (*Id.* at 9); *see also Clark v. Tarrant Cty. Tex.*, 798 F.2d 736, 744–45 (5th Cir. 1986) (listing the six factors courts should consider in determining whether an entity qualifies as an arm of the state). Based on this finding, the Court dismissed Hopkins' Section 4712 and Section 1981 claims. (*Id.* at 9). The Court also found that Hopkins had not pled his Section 1983 claim with enough specificity but granted Hopkins leave to amend this claim. (*Id.* at 10–11).

On November 9, 2022, Hopkins filed an amended complaint, raising claims of race discrimination in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1981. (Dkt. 40, at 9–11). In response, Wayside moved to dismiss the amended complaint under Rule 12(b)(6). (Dkt. 41). On March 16, 2023, while Wayside's second motion to dismiss remained pending, Hopkins filed a motion for

reconsideration. (Dkt. 46). Hopkins asks the Court to reconsider its decision to grant Wayside's motion to dismiss in light of a recent Fifth Circuit decision, *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 179–83 (5th Cir. 2023).

## II. LEGAL STANDARD

### A. Rule 54(b)

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Hopkins does not specify a rule as the basis of his motion. However, as the motion pertains an interlocutory order, the Court evaluates it under Federal Rule of Civil Procedure 54(b). "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area*

3

*Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Hopkins' Motion for Reconsideration

In his motion for reconsideration, Hopkins's asks the Court to reconsider its finding that Wayside Schools was entitled to sovereign immunity and its dismissal of Hopkins's claims under 42 U.S.C. § 1981 and 41 U.S.C. § 4712. (Mot., Dkt. 46, at 2). Hopkins's sole basis for his motion is

the recent ruling in *Springboards*, 62 F.4th 174, in which the Fifth Circuit found that a charter school was not an arm of the state and was not entitled to immunity. *Id.* at 183. In response, Defendant Wayside argues that Hopkins' motion is procedurally deficient and that the motion should be denied because *Springboards* was not a change in law but simply a specific application of the *Clark* factors. (Resp., Dkt. 47, at 2–6, 6–8).

First, Wayside argues that the Court should deny Hopkins' motion as "procedurally deficient" because it was not filed within a reasonable amount of time. (*Id.* at 2–6). However, Rule 54(b) allows courts to revise interlocutory decisions "at any time before the entry of judgment." Fed. R. Civ. P. 54(b). Therefore, the Court finds that the timing of the motion does not amount to procedural deficiency.

Next, Wayside avers that Hopkins' motion attempts to rehash arguments that were presented in the motion to dismiss. (*Id.* at 5–8). Hopkins' sole argument for reconsideration is the recent opinion in *Springboards*, in which the Fifth Circuit held that a charter school defendant was not entitled to Eleventh Amendment immunity. 62 F.4th at 183. According to Wayside, the Fifth Circuit's analysis in *Springboards* is not a change in law but simply a specific application of the *Clark* factors, which this Court has already analyzed. (Resp., Dkt. 47, at 6–8).

The Court agrees with Wayside that the *Springboards* decision does not constitute a change in law and finds that reconsidering its analysis of the *Clark* factors in light of *Springboards* is not in the interest of justice. The Fifth Circuit has explained that whether an entity qualifies turns on a consideration of: (1) whether state statutes and case law characterize the entity as an arm of the state; (2) the entity's source of funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *See Clark v. Tarrant Cty. Tex.*, 798 F.2d 736, 744–45 (5th Cir. 1986). Although no

combination of factors is necessary to demonstrate sovereign immunity, the Fifth Circuit has held that the source of an entity's funding is the most important consideration. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002) (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999)). In its order regarding Wayside's first motion to dismiss, the Court analyzed the *Clark* factors and found that the factors indicated "that Wayside is an arm of the state for purposes of sovereign immunity from an unconsented-to suit." (Order, Dkt. 33, at 9).

Hopkins argues that in *Springboards* the Fifth Circuit ruled that charter schools are not entitled to Eleventh Amendment immunity, but he overstates the reach of the case. In *Springboards*, the district court found that defendant IDEA Public Schools (IDEA), a nonprofit organization that operates charter schools in Texas, was an arm of the state and was thus entitled to sovereign immunity. 62 F.4th at 178. On appeal, the Fifth Circuit concluded that IDEA was not an arm of the state based on an analysis of the *Clark* factors. *Id.* at 183. However, the Fifth Circuit's analysis was fact specific and not dispositive in relation to this Court's own analysis of the factors.

First, the Court's analysis of factors one, three, and four is consistent with the Fifth Circuit's analysis. As to the second factor, the Fifth Circuit noted, as it has held before, that the source of funding "carries the most weight because one of the Eleventh Amendment's central purposes is to protect state treasuries from involuntary liability." *Id.* at 180 (citing *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 440–41 (5th Cir. 1985)). In light of this purpose, the court disagreed with the district court's finding that this factor counseled in favor of immunity. *Id.* at 180. The district court had found that "'94 percent of [IDEA's] funding comes from State and federal sources.'" *Id.* However, the record showed that this percentage aggregated several sources of funding. *Id.* at 179–80. Furthermore, the charter school conceded that the majority of its state funding was restricted; the funding would not be available to cover judgments. *Id.* at 180. Since the

6

charter school's state funding was limited and unavailable for judgments, and the state was unlikely to have to pay for an adverse judgment, the second factor weighed against immunity. *Id.*

Here, in contrast, Hopkins has never disputed that Wayside received 89 percent of its funding from the state in the most recent fiscal year. (Order, Dkt. 33, at 7; Resp., Dkt. 47, at 8). Instead, Hopkins argues that the state would not be liable because Wayside's professional insurance is likely to cover any judgment. (Resp., Dkt. 48, at 2–3). The Court did not find this argument compelling when Hopkins raised it at the motion to dismiss stage, and nothing in *Springboards* suggests the Court should find otherwise at this time.

The Court is also unpersuaded by Hopkins's arguments regarding the remaining factors. As to factor five, Hopkins argues that "the Fifth Circuit rejected the *Perez* analysis this court relied on, finding that even if the statute was silent on the issue, IDEA has sued and been sued in its own name." (Pl.'s Reply, Dkt. 48, at 3 (citing *Springboards*, 62 F.4th at 182)). But the Fifth Circuit did not reject *Perez*. It distinguished it because "*Perez* made no finding about whether the entity in question had a history of suing in its own name," whereas in *Springboards*, IDEA had already conceded it had conceded it had sued in its own name in the past. *Springboards*, 62 F.4th at 182. Here, Hopkins has presented no evidence that Wayside has a history of suing in its own name, and Wayside has not conceded this point. Hopkins further argues that *Perez* does not apply because the statute is not silent on the issue, as Wayside is a non-profit corporation, which under the Texas Business Organizations Code can "sue and be sued." (Pl.'s Reply, Dkt. 48, at 3 (citing Tex. Bus. Org. Code § 2.101(1)). However, in *Springboards*, IDEA was also a non-profit corporation, and the Fifth Circuit nonetheless noted that the Texas Education Code was silent as to charter schools. 62 F.4th at 177, 182. Judge Oldham's concurrence addresses this issue at length, but the majority did not adopt this reasoning.

In summary, even following the Fifth Circuit's reasoning in *Springboards*, the Court is unpersuaded that it should change its findings that factors two—the most important factor—and factor five counsel in favor of immunity. Only factor four and factor six counsel against immunity. Therefore, the Court declines to reconsider its finding of immunity and will deny Hopkins's motion.

### B. Motion to Strike

Having disposed of his motion for reconsideration, the Court now considers Wayside's motion to strike some of Hopkins' claims before addressing its motion to dismiss. Hopkins' complaint alleges that he was fired due to his whistleblowing activities and due to his race. (Am. Compl., Dkt. 40, at 9–12). He brings claims for violations of 42 U.S.C. § 1983, and cites both the whistleblowing statute, 41 U.S.C. § 4712, and a race discrimination statute, 42 U.S.C. § 1981.

Wayside has moved to strike the portions of Hopkins' amended complaint alleging § 1981 and § 4712 claims. (Mot., Dkt. 41, at 16–17). In its previous order, the Court granted Hopkins' leave to amend his complaint so that he could attempt to plead his racial discrimination, first styled as a § 1981 claim, with particularity. (Order, Dkt. 33, at 11). Therefore, the Court will deny Wayside's motion as to the § 1981 claims. However, as the Court did not grant leave to amend any other claims, and Hopkins did not seek any further leave, the Court grants Wayside's motion as to the § 4712 claims.

### C. Motion to Dismiss for Failure to State a Claim

With respect to the remaining discrimination claims, Wayside argues that Hopkins failed to state a claim because he has not alleged that either: (1) Wayside itself had an official policy or custom that resulted in the alleged unconstitutional act, or (2) a final policymaker for Wayside took discriminatory action against him, as required under *Monell*. (Mot., Dkt. 41, at 9–14). Wayside further argues that Hopkins has not properly pled a claim of racial discrimination. (*Id.* at 15). For the

following reasons, the Court finds that Hopkins properly claimed action by a final policymaker but has failed to plead a claim of racial discrimination under either Section 1981 or Section 1983.[1]

*1. Monell* Liability

A governmental entity such as Wayside cannot be held liable for violations under a theory of respondeat superior or vicarious liability. *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 694 (1978). Therefore, in order to assert a claim under 42 U.S.C. § 1983 against Wayside, Hopkins must allege that the unconstitutional acts he complains of were committed by Wayside itself rather than by its employees or agents. Alternatively, Hopkins may allege that an official with final policymaking authority acted in a discriminatory way. *Id.* Under Texas law, public school boards make policy and superintendents administer it. *Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007).

Here, Hopkins has sufficiently alleged that a final policymaker with authority over the issue decided to terminate him. The complaint alleges he was terminated by Wayside's Superintendent, and the Chairman of Wayside's School Board. (Am. Compl., Dkt. 40, at 6). As a matter of law, the Superintendent cannot be considered a final policymaker absent a grant of policymaking authority by the Board and Hopkins has not alleged the Superintendent received such a delegation. *See Barrow*, 480 F.3d at 380. However, Hopkins also alleged that the Chairman terminated him "with the backing of the school board." (Am. Compl., Dkt. 40, at 7). Because the Board is a policymaker for Wayside under Texas law, the Court finds that Hopkins' allegation sufficiently establishes *Monell* liability against Wayside.

---

[1] Hopkins' complaint also states that "Any other immunity is waived via 42 U.S.C. § 2000d-7." (Am. Compl., Dkt. 40, at 10). Section 2000d-7 waives Eleventh Amendment immunity for violations of certain federal statutes prohibiting discrimination by recipients of federal financial assistance. 42 U.S.C. § 2000d-7. As Hopkins' suit concerns employment discrimination, Hopkins' "waiver" is inapplicable.

2. Race Discrimination through § 1983.

However, the Court also finds that Hopkins has not plausibly alleged a § 1983 race discrimination claim. Hopkins claims Wayside violated his Fourteenth Amendment rights by discriminating against him on account of his race. (Am. Compl., Dkt. 40, at 10). Hopkins must plead the ultimate elements that would make his claim plausible. Here, Hopkins must allege: (1) he suffered an adverse employment action, (2) taken against him because of his protected status. *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (stating the necessary elements for a Title VII discrimination claim); *see also Lauderdale v. Tex. Dep't. of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007).

Here, Hopkins has not plausibly alleged that Wayside discriminated against him because of his race. He claims that the Superintendent made some rude remarks against him and that the Chairman fired him with the support of the Wayside School Board. (Am. Compl., Dkt. 40, at 6–7, 9). He also alleges that two non-African American auditors who worked on the same audit and reported the same financial mismanagement and accounting errors were not fired from the audit. (*Id.*). But these auditors were not Wayside employees, but representatives from an outside firm. (*See id.* ("The two auditors from McConnell & Jones . . . .")). Even taking Hopkins' his allegations as true and construing them liberally, the Court cannot draw the reasonable inference that Wayside terminated him because of his race. Therefore, the Court will grant Wayside's motion to dismiss as to this claim.

Finally, Hopkins also brings a § 1981 claim through § 1983. However, a plaintiff making a § 1981 claim "bears the burden of showing that race was a but-for cause of its injury" and that burden remains constant throughout the life of a case. *Comcast Corporation v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014–15 (2020). Here, Hopkins does not claim race was a but-for cause of his injury; he claims that he was fired at least partially because of his alleged whistleblowing

activities. Therefore, he has not sufficiently pled a § 1981 claim, and the Court will grant Wayside's motion as to that claim.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiff Deroald Hopkins' Motion for Reconsideration of Defendant's Motion to Dismiss Regarding Eleventh Amendment Immunity, (Dkt. 46), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Wayside School's Motion to Strike, (Dkt. 41), is **GRANTED IN PART**. Wayside's motion is **GRANTED** as to Hopkins' § 4712 claims. Wayside's motion is **DENIED** as to Hopkins' § 1981 claims.

**IT IS FURTHER ORDERED** that Wayside's Amended Motion to Dismiss for Failure to State a Claim, (Dkt. 41), is **GRANTED**. **IT IS FURTHER ORDERED** that Hopkins' claims are **DISMISSED.**

**SIGNED** on August 11, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE